FILED

2021 Nov-30  AM 10:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JESSICA LYNSEY KIDD,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-cv-01628-ACA** |
| | } | |
| **COMMISSIONER,** | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Jessica Lynsey Kidd appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income.   Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Kidd applied for a period of disability, disability insurance benefits, and supplemental security income on December 18, 2017, alleging disability beginning on October 6, 2017.  (R. at 34, 92, 113).  The Commissioner initially denied Ms. Kidd's claims (*id.* at 133–142), and Ms. Kidd requested a hearing before an

Administrative Law Judge ("ALJ") (*id.* at 145–146).  After holding a hearing (r. at 56–91), the ALJ issued an unfavorable decision (*id.* at 31–52).  The Appeals Council denied Ms. Kidd's request for review (*id.* at 1–7), making the Commissioner's decision final and ripe for the court's judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Kidd had not engaged in substantial gainful activity since her October 6, 2017 alleged onset date. (R. at 36). The ALJ found that Ms. Kidd's migraines, fibromyalgia, and hearing loss were severe impairments but that her vision problems/open angle glaucoma, aphasia, vaginal infection,

dysuria, fever, herpes, urinary tract infection, upper respiratory infections, fatty liver, sinusitis/bronchitis, fever, obesity, insomnia, generalized hyperhidrosis, acute pharyngitis, chest pain, back pain, status post stroke, anxiety, and depression were non-severe impairments. (*Id.* at 36–37). The ALJ then concluded that Ms. Kidd does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 40).

After considering the evidence of the record, the ALJ determined that Ms. Kidd had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.976(b) except that she faced some additional physical and environmental limitations. (R. at 41). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Kidd was able to perform her past relevant work as a phlebotomist. (*Id.* at 45). Accordingly, the ALJ determined that Ms. Kidd had not been under a disability, as defined in the Social Security Act, from her alleged October 6, 2017 onset date through the date of the decision. (*Id.* at 45).

## IV. DISCUSSION

Ms. Kidd argues that the court should reverse the Commissioner's decision because: (1) the Appeals Council erroneously failed to consider new evidence; (2) the ALJ failed to adequately consider Ms. Holland's testimony and medical evidence

4

about side effects of medication; and (3) the ALJ failed to properly evaluate the opinion of Ms. Holland's treating physician, Dr. Enrico Gaspar.  (Doc. 18 at 20–28).  The court considers each issue in turn.

> 1.    New Evidence Before the Appeals Council

Ms. Kidd's first argument is that the Appeals Council erred in failing to consider a mental health examination and a medical source statement from Dr. June Nichols that she submitted after the ALJ issued his decision.  (Doc. 18 at 20–22).

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  The Appeals Council must review evidence that is new, material, and chronologically relevant.  *Ingram*, 496 F.3d at 1261.  The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Ms. Kidd submitted to the Appeals Council records from Dr. Nichols, including a January 29, 2020 psychological evaluation and a February 24, 2020 mental health source statement.  (R. at 8, 16–20).  At the conclusion of the January 29, 2020 examination, Dr. Nichols stated that Ms. Kidd cannot understand, remember, or carry out short/simple instructions due to receptive aphasia.  (R. at 20).

Dr. Nichols also explained that Ms. Kidd cannot maintain attention, concentration and/or pace for periods of at least two hours. (*Id.*). In addition, she noted that Ms. Kidd has difficulty completing tasks and cannot follow an ordinary routine without special supervision. (*Id.*). Dr. Nichols also stated that Ms. Kidd cannot adjust to frequent work changes; interact well with co-workers or supervisors; or maintain socially appropriate behavior. (R. at 20). Dr. Nichols explained that Ms. Kidd would be off task 80% of the time in a normal 8-hour work day and that in a 30-day period, she would miss 10 to 15 days of work due to her psychological symptoms. (*Id.*).

On February 24, 2020, Dr. Nichols completed a mental health source statement which largely summarizes her January 2020 examination findings on a form that asked her to respond "yes" or "no" to a series of questions. (R. at 8). In addition, the mental health source statement explains that Ms. Kidd's limitations have existed since October 6, 2017. (*Id.*).

With respect to this evidence, the Appeals Council stated that it "does not relate to the period at issue," and therefore, "it does not affect the decision about whether" Ms. Kidd was "disabled beginning on or before" the date of the ALJ's decision. (R. at 2). As an initial matter, the court disagrees with the Commissioner's argument that this statement reflects that the Appeals Council considered Dr. Nichols's psychological evaluation or her mental health statement. (*See* doc. 19 at 8). The Appeals Council expressly stated that it had considered only Ms. Kidd's

reasons that she disagreed with the ALJ's decision and that it exhibited Ms. Kidd's reasons to its order. (R. at 1). There is no similar statement with respect Dr. Nichols' records, nor is there any other indication in the Appeals Council's order that it considered Dr. Nichols' evaluation and mental health source statement. (*See id.* at 1–4). Accordingly, the must consider whether the Appeals Council erroneously failed to review new, chronologically relevant, and material evidence. *See Washington*, 806 F.3d at 1320–21.

No party disputes that Dr. Nichols' records are new evidence. (*See generally* docs. 18, 19, 20). The court need not decide whether the evidence is chronologically relevant because even if the evidence does relate to the time before the ALJ's decision, the evidence is not material.

The parties dispute the standard for materiality of new evidence submitted to the Appeals Council. Based on the current regulations and the regulations in place at the time Ms. Kidd filed her claim, the Commissioner contends that there must be a "'reasonable probability that the additional evidence would change the outcome of the decision.'" (Doc. 19 at 5, citing 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)). Relying on Eleventh Circuit case law interpreting previous versions of the regulations, Ms. Kidd contends that there must be a "'reasonable *possibility* that the new evidence would change the administrative result.'" (Doc. 18 at 21, citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987), emphasis in Doc. 18).

The Eleventh Circuit has not clarified which metric controls.  In the only published decision the undersigned has located on the issue, the Court assumed without deciding that the "reasonable probability" standard controlled because the parties did not dispute the issue.  *Pupo v. Comm'r, Soc. Sec. Admin.*, --- F. 4th ----, 2021 WL 5100791, at *7, n. 3 (11th Cir. Nov. 3, 2021).   Ultimately, the court finds that any disagreement between the two standards is one of form over function.  On at least one occasion in evaluating a case under the previous version of the regulations, the Eleventh Circuit used the terms "reasonable possibility" and "reasonable probability" interchangeably.  *See Washington*, 806 F.3d at 1321-22. This suggests that any difference between the meaning of the two terms is not significant enough to compel a different result.

Setting aside that Ms. Kidd's briefs offer no explanation for how Dr. Nichols' reports would change the ALJ's decision (*see* doc. 18 at 20–22; doc. 20 at 2–5), when considered against the record as a whole, the evidence does not create a reasonable probability or a reasonable possibility that the ALJ would have reached a different conclusion.  Dr. Nichols' opinions about the limiting effects of Ms. Kidd's aphasia are not supported by her examination findings that Ms. Kidd had fair eye contact, clear speech, normal thought processes, appropriate affect, clear stream of consciousness, normal conversation, good judgment and insight, grossly intact recent memory, fair general fund of knowledge, and concrete thinking.  (R. at 18–

19).   In addition, Dr. Nichols' reports are inconsistent with other mental health records which the ALJ reviewed.  Specifically, treatment notes that pre-date Ms. Kidd's alleged disability onset date indicate that she reported improvement with medication for her mental health symptoms.  (R. at 37, citing r. at 686–692).  In addition, other mental health records that post-date Ms. Kidd's alleged onset date show that although she received ongoing mental health treatment, she generally had a stable mood, congruent affect, the ability to complete basic daily functions, a solid work history, engagement in appropriate social behaviors, normal thought processes and content, normal insight and judgment, and no issues with short- or long-term memory.  (*See e.g.,* R. at 719, 721, 815, 817, 820, 850, 922, 1063).

Although some evidence in the record might support Dr. Nichols' conclusions, based on the record as a whole, Dr. Nichols' report does not render the ALJ's decision erroneous or "change the conclusion that the denial of benefits . . . was supported by substantial evidence." *McCants v. Comm'r of Soc. Sec.*, 605 F. App'x 788, 791 (11th Cir. 2015).

2.   Medication Side Effects

Ms. Kidd's second argument is that the ALJ failed to adequately consider her testimony and medical evidence about the side effects of her medication.  (Doc. 18 at 23–24).

When determining whether a claimant is disabled, an ALJ must consider a claimant's subjective symptoms, including the side effects of medications. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Here, the ALJ expressly stated that he considered Ms. Kidd's testimony about the side effects of her medication, but like much of Ms. Kidd's subjective testimony, the ALJ found that her complaints were not entirely consistent with the medical evidence and other evidence in the record for the reasons he later explained in the decision. (R. at 42–43). This is sufficient to show that the ALJ considered Ms. Kidd's testimony along with the objective medical evidence in rejecting her testimony that any medication side effects affected her ability to work. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) (explaining that the ALJ's decision must "mak[e] it possible for a reviewing tribunal to know that the claim was not entirely ignored"). Therefore, the court rejects Ms. Kidd's claim that the ALJ "did not consider or discuss how the medications affected" her ability to work. (*See* Doc. 18 at 23).

Citing *Cowart*, Ms. Kidd argues that the ALJ failed to develop the record fully regarding the effects of her medication. (Doc. 18 at 23–24). But *Cowart* is distinguishable. In *Cowart*, an unrepresented claimant testified that her medications made her "kind of zonked out mot so the time." *Cowart*, 662 F.2d at 737. The ALJ did not elicit testimony or make additional findings on that issue. *Id.* The Eleventh Circuit found that the ALJ erred because the claimant was not represented, and

10

therefore, the ALJ had a "special duty" to probe for relevant facts to ensure a full and fair hearing.  *Id.* at 735.   Thus, although in certain circumstances, an ALJ has a heightened duty to develop the record concerning medication side effects, those circumstances are not present in this case.   Ms. Kidd was represented by counsel, and counsel could have elicited additional testimony about any specific limitations caused by Ms. Kidd's medication side effects.

In addition, despite the ALJ's obligation to develop the record, "the claimant bears the burden of proving [s]he is disabled," and the claimant must introduce evidence to support her claim that her symptoms and/or the side effects of medication make her unable to work.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Here, Ms. Kidd cites two pieces of evidence concerning her medication side effects:  (1) her hearing testimony that her medication causes dizziness, fatigue, and stomach issues and (2) her treating physician's physical capacities evaluation in which he indicated that Ms. Kidd's medication side effects include nausea, vomiting, and drowsiness.  (Doc. 18 at 23, citing R. at 77–77, 722).  Ms. Kidd has not made any argument about why some unspecified level of dizziness, fatigue, nausea, vomiting, or drowsiness affected her ability to work during the relevant time period. (*See* doc. 18 at 23–24).  And given the balance of the evidence in the record, the ALJ was not required to explore the issue further because nothing in the record suggests that Ms. Kidd suffered from more than minimal side effects of medication.

11

For instance, in December 2017, Ms. stopped certain medication for her fibromyalgia because of side effects and she requested to try a new medication for her depression. (R. at 660–661). At her next appointment a month later, she reported no issues with medication. (R. at 894). Throughout much of 2018, Ms. Kidd reported no problems with medication side effects. (*See e.g.,* r. at 906–907, 910–917, 924–927, 932). In May 2018, Ms. Kidd renewed her anxiety prescription medication and did not complain about any associated side effects. (R. 924, 926). During a medication review at a June 2018 doctor's visit, Ms. Kidd did not report any side effects. (R. at 931). Ms. Kidd often denied abdominal pain, and the few times that Ms. Kidd complained of nausea and vomiting, she did so in connection with certain acute infections or conditions, not as medication side effects. (*See* R. at 886–888, 913–914, 935–937, 948). Likewise, Ms. Kidd has not cited, and the undersigned has not located, medical evidence demonstrating that Ms. Kidd complained to any provider about dizziness or fatigue as side effects of prescription medication.

In sum, neither Ms. Kidd's testimony nor the medical evidence suggests that her side effects alone or in combination with other impairments were severe enough to be disabling. Accordingly, the court finds that the ALJ adequately considered Ms. Kidd's medication side effects, and he did not err in failing to elicit additional

testimony or make additional findings about the alleged side effects of Ms. Kidd's medication.

       3.     Dr. Gaspar's Opinion

Ms. Kidd's third argument is that the ALJ failed to accord great weight to the opinion of her treating physician, Dr. Gaspar, without articulating good cause for doing so, as required by the Eleventh Circuit's treating physician rule. (Doc. 18 at 24–28). The Commissioner argues that Ms. Kidd's reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing how the Commissioner evaluates medical opinions for claims like Ms. Kidd's filed after March 27, 2017. (Doc. 19 at 13–25). Ms. Kidd acknowledges that the "'treating physician rule' has been abolished by [the new Social Security] Regulation," but she argues that the rule "remains in effect by Eleventh Circuit precedent." (Doc. 18 at 26–27). The court need not resolve this dispute regarding which standard applies to the evaluation of Dr. Gaspar's opinion because under either framework, the ALJ's decision is supported by substantial evidence.

Under the new regulations, an ALJ need not give any special weight to any medical opinion, including that of a treating physician. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the

relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he considered those factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Eleventh Circuit's treating physician rule requires that an ALJ give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.

In March 2018, Dr. Gaspar completed a physical capacities form in support of Ms. Kidd's disability claims. (R. at 722). Dr. Gaspar opined that Ms. Kidd's fibromyalgia, neuropathy, and myofascial pain syndrome would cause a number of limitations. Specifically, Dr. Gaspar opined that Ms. Kidd can sit upright for two

hours at a time and that she can stand for less than 30 minutes at a time. (*Id.*). Dr. Gaspar stated that Ms. Kidd would need to lie down, sleep, or sit with her legs propped at waist level or above for one hour in an 8-hour work day. (*Id.*). He also stated that Ms. Kidd would be off task 20% of a normal work day and would miss two to four days of work per month. (R. at 722).

The ALJ found Dr. Gaspar's opinion unpersuasive. (R. at 45). The ALJ explained that Dr. Gaspar's findings "are inconsistent with the longitudinal record of evidence which reflects conservative treatment for fibromyalgia and normal musculoskeletal and neurological exams." (*Id.*). The ALJ also stated that Ms. Kidd "has generally always been noted to have normal gait and stance." (*Id.*).

Despite acknowledging that the new regulations apply, Ms. Kidd advances no argument regarding how this explanation fails to satisfy the ALJ's regulatory obligation to examine the supportability and consistency of Dr. Gaspar's opinion; her only argument is that ALJ did not provide good cause for rejecting Dr. Gaspar's opinion. (*See* doc. 18 at 26–28; doc. 28 at 9–11). Nevertheless, the court finds that the ALJ complied with the new regulations, *see* 20 C.F.R. §§ 404. 1520c(c)(1)-(2), 416.920c(c)(1)-(2), and he also articulated good cause for not giving Dr. Gaspar's opinion great weight, *see Crawford*, 363 F.3d at 1159–61.

Many of Dr. Gaspar's treatment notes that the ALJ evaluated in his decision do not support and are inconsistent with Dr. Gasper's own opinion. For example, although Dr. Gaspar noted some reduced motor strength and neuropathy in December 2017, the ALJ explained that Ms. Kidd otherwise "had normal movement of all extremities, normal muscle tone, normal gait and station, and normal reflexes." (R. at 43, citing r. at 660–662). The ALJ also noted that in March 2018, when Ms. Kidd saw Dr. Gaspar for a fibromyalgia flare up, Ms. Kidd had "normal movement in all extremities, normal muscle tone, motor strength, no tremors, normal balance, no edema and normal gait/stance." (R. at 44, citing r. at 903–905). In addition, the ALJ also examined treatment notes from other providers that are inconsistent with Dr. Gaspar's opinion because they often reflect normal musculoskeletal and neurological exam findings. (R. at 43, citing r. at 664, 701, 708, 829, 867).

Without citing to specific evidence, Ms. Kidd claims in a conclusory fashion that Dr. Gaspar's opinion "is well supported by clinical and laboratory findings, and [is] not inconsistent with other substantial evidence." (Doc. 18 at 28). Even if other evidence supports Dr. Gaspar's opinion, the court cannot "decide facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the" Commissioner. *Winschel*, 631 F.3d at 1178 (quotation marks omitted); *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by

substantial evidence.") (quotation marks omitted).  Accordingly, the court will not disturb the ALJ's articulated findings concerning Dr. Gaspar's opinion.

**V.      CONCLUSION**

Substantial evidence supports the ALJ's denial of Ms. Kidd's applications for a period of disability, disability insurance benefits, and supplemental security income.  Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this November 30, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE